534 A.2d 478

**COMMONWEALTH of Pennsylvania**

v.

**William WOODWARD, Appellant.**

Superior Court of Pennsylvania.

Submitted June 23, 1987.

Filed Nov. 25, 1987.

---

John J. Stanzione, Assistant Public Defender, West Chester, for appellant.

Stuart B. Suss, Assistant District Attorney, West Chester, for Com., appellee.

Before McEWEN, TAMILIA and HOFFMAN, JJ.

TAMILIA, Judge:

Appellant, William Woodward, appeals from the judgment of sentence imposed following his open plea of guilty to two counts each of forgery and theft by deception on June 10, 1986. He was sentenced on August 19, 1986, to two concurrent terms of imprisonment of two to four years on the forgery charges and one year of probation on each theft by deception charge, to run concurrent to each other but consecutive to the forgery sentences. Appellant now argues trial court error in including his prior juvenile record in the computation of the prior record score under the sentencing guidelines.

At the sentencing hearing, the Commonwealth submitted that appellant had a prior record score of six, arriving at this score by including in the prior record score computation appellant's juvenile record, which included adjudications of delinquency for the crimes of robbery and burglary.

Appellant specifically objected to the use of his prior juvenile adjudications in determining the prior record score; the sentencing judge, however, agreed with the Commonwealth, found the use of prior juvenile adjudications to be proper and determined appellant's prior record score to be six.

Appellant filed this timely appeal on September 17, 1986. On appeal, he argues the sentencing commission exceeded its legislative authority by prescribing a range of sentencing of increased severity where prior juvenile adjudications are computed into a prior record score. Appellant contends that without the computation of his juvenile adjudication, his prior record score would have been four rather than six.

At first blush, we would appear to be constrained to follow the holding in this Court's recent decision in *Commonwealth v. Tilghman*, 366 Pa.Super. 328, 531 A.2d 441 (1987), which would require us to vacate the sentence and remand for resentencing in accordance with that Opinion.

In *Tilghman*, appellee/defendant pled guilty to a charge of burglary on June 29, 1984 and was sentenced on December 13, 1984. At the sentencing hearing, the court determined it was proper to include appellee's prior juvenile adjudication of involuntary deviate sexual intercourse in computing his prior record score for use under the sentencing guidelines. Appellee filed a timely motion to modify sentence and, on February 21, 1985, the court held a second hearing. At that time, it decided appellee's prior juvenile adjudication could not be considered in computing his prior record score. The Commonwealth appealed. The majority of this Court, en banc, decided that a reading of 42 Pa.C. S.A. § 2154, which was, until December 11, 1986, the enabling act to the sentencing guidelines, showed it neither expressly granted nor necessarily implied the Commission had the power to specify a range of sentences based on criteria not specified in section 2154(2).

> In other words, the Sentencing Commission lacked the power to adopt guidelines in which the prior record score was computed on the basis of anything other than prior convictions of felonies or convictions of crime involving the use of a deadly weapon.

*Tilghman*, 366 Pa.Superior Ct. at 336, 531 A.2d at 445.

While the *Tilghman* majority recognized the enabling act was amended in December of 1986, and the amendment is

now codified at 42 Pa.C.S.A. § 2154(a), they found the amendment supports their position that the original enabling act did not permit the inclusion of juvenile adjudications in the computation of prior record scores.[1,2]

■ In the case before us, appellant, like Tilghman, was sentenced under the law existing prior to the amendment to section 2154, thus the issue would appear to be determined by the outcome in *Tilghman*.[3] In fact, the Commonwealth, in its brief, at note 2, acknowledges that our en banc ruling in *Tilghman* controls the disposition of the instant appeal. For reasons that we now discuss, we hold that *Tilghman* no longer applies and the judgment of sentence of the trial court must be affirmed.

Initially, we recognize the appellant's juvenile record may be a consideration in determining the sentence he receives as an adult. This Court, in the en banc case of *Commonwealth v. Krum*, 367 Pa.Super. 511, 533 A.2d 134 (1987), recently reiterated the fact that "[t]he role of prior juvenile adjudications in the sentencing process is an issue which

1. *See Tilghman*, 366 Pa.Superior Ct. at 337–338 n. 6, 531 A.2d at 446 n. 6. *Cf.* Dissenting Opinion by Tamilia, J., which argues the amendment was intended to clarify the prior enabling act rather than to change it.

2. Through Act 1986 No. 165, P.L. 1521, the legislature reserved to itself the authority to define what constitutes a prior conviction or adjudiation of delinquency for purposes of the prior record score. Act 165, amended 42 Pa.C.S.A. § 2154(a)(2), now directs that the guidelines shall:

   Specify a range of sentences of increased severity for defendants previously convicted of or adjudicated delinquent for one or more misdemeanor or felony offenses committed prior to the current offense. For purposes of this section 'previously convicted or adjudicated delinquent' shall include any finding of guilt of adjudication of delinquency whether or not sentence has been imposed or disposition ordered prior to the commission of the current offense.

   The statutory language under Act 165, directing the sentencing commission to include prior juvenile adjudications of delinquency in the prior record score of the guidelines, became effective February 9, 1987. This statutory amendment was cited with approval by the Supreme Court in footnote 3 of *Commonwealth v. Samuels*, 516 Pa. 300, 532 A.2d 404 (1987).

3. Appellee Woodward was sentenced on August 19, 1986, while the amendment to 42 Pa.C.S. § 2154 did not take effect until February 9, 1987.

this Court has consistently deemed to be of substantial significance." The *Krum* Court also considered the Juvenile Act at 42 Pa.C.S. § 6354(b)(1) and *Commonwealth v. Smith,* 333 Pa.Super. 179, 481 A.2d 1365 (1984). The *Smith* Court stated:

> The intention of the Legislature is clear in its adoption of the policy which not only allows but requires examination of a defendant's juvenile record in fashioning appropriate sentences.
>
> The Juvenile Act itself, 42 Pa.C.S.A. § 6354(b)(1), carves out an exception to the use of the juvenile's record in a subsequent adult proceeding, stating such records may be used:
>
> > (1) in dispositional proceedings after conviction of a felony for the purpose of a presentence investigation and report;
>
> *Commonwealth v. Allen,* 287 Pa.Super. 88, 429 A.2d 1113 (1981).
>
> It is clearly the intent of the Legislature that a child who continues his pattern of serious and violent anti-social activity into adulthood, should not receive the benefit of a cloak of immunity regarding that behavior, when it is relevant to predicting future behavior and the public safety is at risk.

*Id.,* 333 Pa.Superior Ct. at 182, 481 A.2d at 1366. Our review of the sentencing transcript reveals the sentencing court's consideration of appellant's juvenile history.

> I think that it is helpful to me in this particular instance to understand that this man has a continuous history of violating the law. If I were to view him as somebody who whatever it was, three or four years ago, committed two burglaries, period, that would be one thing, but understanding that the burglaries were just a continuation of a bad juvenile record is another thing in terms of evaluating whether or not Mr. Woodward would be likely to take advantage of a break if he were given one.
>
> Now with respect to his psychological history, I hope that something can be done for him, but we have to

concern ourselves, Mr. Woodward, with conduct. The court as such is not a social agency or a therapeutic agency as I view it. We should take into consideration what the sociologists and psychologists tell us and so forth but we have to be concerned with the fact that almost continuously since age 15 you have been an anti-social person and have done things which are contrary to the laws of the Commonwealth and we have got to do something to deal with that. Now, I don't see any basis in what I have been told and what I have read about Mr. Woodward for mitigating his sentence. I, therefore, think that I must give him the minimum range as the guidelines discloses it to me. I think that I must—he must go to prison, and the guideline range says he must go to state prison.

S.T. 8/19/86, pp. 10–11. The trial court, in sentencing appellant, without inclusion of the juvenile offenses in the prior record score, was still empowered to impose the same sentence while remaining within the guidelines.

Forgery has an offense gravity score of five; following are the respective sentencing guidelines to be used with prior record scores of four and six:

| Minimum | Aggravated | Mitigated |
|---|---|---|
| Prior record score 4 | | |
| 18–27 | 27–34 | 14–18 |
| Prior record score 6 | | |
| 24–36 | 36–45 | 18–24 |

█ It is to be noted that under the guidelines, using a prior record score of four, as opposed to six, with the considerations expressed by the trial court, the sentence imposed would still be within the minimum range and would not result in an abuse of discretion. Yet guided by *Tilghman*, we would have no choice but to vacate and remand for resentence. We hold *Tilghman* has been overruled by the Supreme Court in *Commonwealth v. Samuels*, 516 Pa. 300, 532 A.2d 404 (1987) and, therefore, the trial court must be affirmed. *Samuels* is a corollary and expansion of the recently filed Opinion of *Commonwealth v. Sessoms*, 516

Pa. 365, 532 A.2d 775 (1987).[4] There it was determined the guidelines were void because of the constitutionally impermissible means of enactment. As to any cases now on appeal where the issue as to the constitutionality of the guidelines was preserved, the holding in *Sessoms* applies, otherwise the issue is waived. Such is the case here where the attack was solely to the validity of the inclusion of prior juvenile offenses, the *Tilghman* issue, and not the underlying constitutionality of the guidelines themselves. In construing the issue in *Samuels*, which is identical to that in *Tilghman* and the case *sub judice*, the Supreme Court, by necessary implication, overrules *Tilghman* and requires affirmance here.

In *Tilghman*, the majority stated in construing 42 Pa.C.S. § 2154:[5]

What the Commonwealth does contend is that § 2154(2) merely sets forth the minimum criteria that the Sentenc-

---

**4.** As to applying the guidelines in this case, they would not be made irrelevant by *Commonwealth v. Sessoms*, 516 Pa. 365, 532 A.2d 775 (1987), as footnote 2 therein provides:

> [2] This ruling is applicable to cases where the issue [of constitutionality] has been "properly preserved at all stages of adjudication up to and including any direct appeal." *Commonwealth v. Cabeza*, 503 Pa. 228, 233, 469 A.2d 146, 148 (1983).

We note that the Supreme Court, in *Sessoms*, did not bar the trial court from *considering* the guidelines in determining an appropriate sentence. Also, *Commonwealth v. Samuels*, 516 Pa. 300, 532 A.2d 404 (1987) provides at note 4, "Inasmuch as Samuels failed to preserve his challenge to the constitutionality of the sentencing guidelines, *Commonwealth v. Sessoms, [supra]* is inapplicable."

**5. Adoption of guidelines for sentencing**

(a) **General Rule**—The Commission shall adopt guidelines for sentencing within the limits established by law which shall be considered by the sentencing court in determining the appropriate sentence for felonies and misdemeanors committed by a defendant. The guidelines shall:

(1) Specify the range of sentences applicable to crimes of a given degree of gravity.

(2) Specify a range of sentences of increased severity for defendants previously convicted of a felony or felonies or convicted of a crime involving the use of a deadly weapon.

(3) Prescribe variations from the range of sentences applicable on account of aggravating or mitigating circumstances.

42 Pa.C.S. § 2154.

ing Commission was required to consider and did not constrain the Commission to include consideration of only the specified criteria. *We believe the Commonwealth's position is contrary to the relevant principles of statutory construction.* (Emphasis added.)

*Tilghman,* 366 Pa.Super. at 335, 531 A.2d at 445.

The Supreme Court rejected the same analysis of the Superior Court in *Samuels* and found, in a 180° reversal, that the Commonwealth's position did in fact have merit. In *Samuels,* the guidelines were held to improperly have provided for increased severity of sentences on the basis of prior convictions for misdemeanors not involving deadly weapons as being without statutory authority. In *Tilghman,* the same argument applied that juvenile offenses were included in the guidelines computation without specific legislative authority.

The Supreme Court, in *Samuels,* speaks conclusively to this issue:

> Superior Court began its analysis with the premise that the Commission's enabling statute, of which this section is a part, is a penal provision and therefore subject to strict construction. Given this perspective, the court determined that paragraph (2) stated the only area in which the Commission was authorized to provide increased severity on account of prior convictions.
>
> The Commonwealth argues that this portion of the statute, though a mandatory direction, is not an exclusive direction; that is, the legislature insisted that the Commission treat a person with prior weapons misdemeanors more severely, but left it to the Commission, in the exercise of its broad grant of general authority, to determine what other conditions, including non-weapons misdemeanors, might also justify increased severity.
>
> This argument, though simple, is highly persuasive. We need not pass upon the Superior Court's questionable judgment that the enabling statute (as distinguished from the actual guidelines produced by the Commission) is

subject to strict construction as a penal provision. Notwithstanding that court's determination that the meaning it attributed to § 2154(2) was "plate glass clear", we are convinced that whether the statute is "strictly" or "liberally" construed, it in no way follows that the mandatory term "shall" is also an exclusive. The General Assembly gave the Commission a broad grant of authority to analyze the impact that various factors should have on the sentencing decision and to promulgate a set of recommended sentences in accordance with its analysis. Certain factors (prior felonies, prior offenses of any grade involving deadly weapons were so important to the legislature that it required the Commission to provide for them. This statement of an affirmative duty of inclusion of certain items carries no prohibition, express or implied, on the authority to include others.[3]

---

[3.] It is noted that the effect of our decision is limited to the present case and others decided in reliance on the Superior Court's decision in it where the Commonwealth has pursued the matter on appeal. Act 165 of 1986, effective February 9, 1987, amended § 2154(2) to overcome the uncertainty caused by the Superior Court's decision in this case and even more explicity provided the Commission with authority to increase the severity of guideline sentences on the basis of misdemeanors of any kind.

*Samuels*, 516 Pa. at 304, 532 A.2d at 405.

Thus the central thesis of *Tilghman* has been emasculated and there can be no other construction given to the issue posed in *Tilghman* and the present case than that the Sentencing Commission acted within its authority to analyze the impact of various factors on the sentencing decision and to recommend sentences in accordance with its analysis. No less important in this consideration are prior adjudications of juveniles on felony charges (*see Smith, supra* ) as are prior misdemeanor offenses by adults. The legislature intended the Sentencing Commission to make those determinations and in doing so it has been affirmed by the Supreme Court.

Judgment of sentence affirmed.